IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MONICA JONES, | ) | |
| | ) | |
| Plaintiff, | ) | No. 17 C 5879 |
| | ) | |
| v. | ) | Judge Virginia M. Kendall |
| | ) | |
| METROPOLITAN WATER RECLAMATION | ) | |
| DISTRICT OF GREATER CHICAGO and | ) | |
| REGINA BERRY, individually, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Monica Jones filed suit on August 11, 2017, against Defendants Metropolitan Water Reclamation District of Greater Chicago (MWRD) and Regina Berry. On October 26, 2017, Jones filed her First Amended Complaint, alleging violations of the Family Medical Leave Act ("FMLA")[1] against MWRD, violations of the FMLA against Berry in her individual capacity under 42 U.S.C. § 1983, and a state law claim of retaliatory discharge against MWRD. [Dkt. No. 21.] Defendants filed a Motion to Dismiss seeking dismissal of the FMLA claims (Counts I–IV), pursuant to Fed. R. Civ. P. 12(b)(6). The Motion to Dismiss is granted for the following reasons. [Dkt. No. 27.]

## BACKGROUND

The facts set forth in Plaintiff's Amended Complaint are accepted as true for the purpose of reviewing the Motion to Dismiss. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010).

---

[1] 29 U.S.C § 2615 et seq.

1

Plaintiff Monica Jones worked as a Diversity Officer for MWRD for nearly 11 months—from September 8, 2015 until August 4, 2016. (Dkt. No. 21 at ¶ 6, 46-47.) Regina Berry, Diversity Administrator of MWRD, was Jones' immediate supervisor. (*Id.* at ¶ 5)

On Friday, July 15, 2015, Jones was in the office elevator when a co-worker carrying an oversized display case struck her in the chest with the case causing Jones to suffer serious chest contusions. (*Id.* at ¶ 7.) On Monday, July 18, Jones continued to feel chest pain and notified Berry that she had been injured by the co-worker. (*Id.* at ¶ 7-8.) Berry instructed Jones to speak with Human Resources and she did: Jones met with HR analyst Cordelia Henry that same day, and met with Henry and HR analyst Robert Byrne the following day. (*Id.* at ¶ 11, 13.) At the meeting on Tuesday, July 19, Jones told Henry and Byrne that she believed the co-worker's conduct had been intentional. (*Id.* at ¶ 14.)

Jones also sought treatment for her injury. On Monday, July 18, after her conversations with Berry and Henry, Jones visited the Immediate Care Center. (*Id.* at ¶ 12). By Thursday morning, Jones' chest pain had increased. (*Id.* at ¶ 15). She went to work around 7:30 a.m., logged in and emailed Berry, Henry and Byrne to inform them that she was going to the emergency room and would notify them upon her return to work. (*Id.* at ¶ 17.) As promised, Jones emailed Berry, Henry and Byrne when she returned around 9:20 a.m., attaching the bill from her emergency room visit and asking whether she should file a workers' compensation claim. (*Id.* at ¶¶ 20-21.) Neither Berry, Henry nor Byrne responded to Jones' email. (*Id.* at ¶ 18.)

That afternoon, however, Berry held an in-person meeting with Jones in which she issued a disciplinary "oral warning" to Jones for violating MWRD policy by logging in earlier that morning. (*Id.* at ¶¶ 22-24.) Immediately following the meeting, Jones emailed Henry and

Byrne stating that she believed Berry was disciplining her in retaliation for the complaint she made against the co-worker that injured her. (*Id.* at ¶¶ 26-27.) Neither Henry nor Byrne responded to Jones' email. (*Id.* at ¶ 28.)

On Friday, July 22, Jones provided a doctor's note that recommended a "light duty" restriction due to her work-related injury. (*Id.* at ¶ 30.) Nonetheless, Jones worked her regular schedule without incident from Friday through the following Wednesday, July 27. (*Id.* at ¶ 31.) On Thursday, July 28, Jones experienced sharp pain during work and scheduled an emergency doctor's appointment. (*Id.* at ¶¶ 33-34.) The doctor issued a "Patient Status Report" recommending she take off two weeks of work to recover from her injury. (*Id.* at ¶¶ 35-36.) Jones emailed Berry, Henry and Byrne a copy of the Report that night. (*Id.* at ¶ 38.). The email to Berry explained,

> My doctor is not allowing me to return to work for the next two weeks. I have a attached a soft copy for your review. Do I need to fill out FMLA paperwork for this time? Or is it notated that the Workers Comp claim is in process? Or is this marked as a medical necessity and for time used? . . .

(*Id.* at ¶ 38; Dkt. No 28 at Ex. A.) This email was also sent to Robert Gottstein and Mary Nix of MWRD. (Dkt. No. 28 at Ex. A.) Jones then called Berry and left a voicemail about the doctor's note, the need for time off and initiating the FMLA process. (Dkt. No. 21 at ¶ 40.) Jones received no response from Berry, Henry or Byrne. (*Id.* at ¶ 39, 41, 42.) On Friday, July 29, Gottstein responded to Jones' email, advising that she "consider looking into completing possible FMLA paperwork." (Dkt. No. 37 at Ex. A.)

Jones did not work from Friday, July 29 through Wednesday, August 3. (Dkt. No. 21 at ¶ 45.) On Thursday, August 4, Berry called Jones to inform her she was being fired for "unsatisfactory progress." (*Id.* at ¶ 46.) Jones also received a letter from MWRD dated August

4, explaining that Berry had recommended the termination based on Jones' unsatisfactory services during her probationary period.  (*Id.* at ¶ 47.)

September 8, 2016 would have marked 12 months' employment at MWRD for Jones.  (*Id.* at ¶ 61.)  Jones' period of recovery for the work-related injury ultimately lasted until October 22, 2016.  (*Id.* at ¶ 52.)

Plaintiff's First Amended Complaint alleges four claims under the FMLA against Defendants.  Counts I and II are claims of interference with Jones' rights under the FMLA against MWRD and Berry, respectively.  (*Id.* at ¶¶ 68, 88)  Counts III and IV are claims of retaliation for Jones' attempt to exercise FMLA rights against MWRD and Berry, respectively. (*Id.* at ¶¶ 101, 118)

## LEGAL STANDARD

"To survive a motion to dismiss under 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)).  "[I]t is not enough for a complaint to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief . . . by providing allegations that 'raise a right to relief above the speculative level.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 777 (7th Cir. 2007) (citing *Twombly*, 550 U.S. at 555) (emphasis in original).

The Court construes the complaint "in the light most favorable to the nonmoving party, accept[s] well-pleaded facts as true, and draw[s] all inferences in her favor." *Reynolds*, 623 F.3d at 1146.  "[L]egal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611,

4

616 (7th Cir. 2011) (citing *Iqbal*, 566 U.S. at 678). Generally, matters outside the pleadings may not be considered on such a motion. *See* Fed. R. Civ. P. 12(b). However, the Court can examine "[d]ocuments that a defendant attaches to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir.1993); Fed. R. Civ. P. 10(c).

## DISCUSSION

Defendants MWRD and Berry seek dismissal of Jones' FMLA claims for interference and retaliation for failure to state a claim pursuant to Rule 12(b)(6). Defendant Berry argues also that Jones' FMLA claims against her in her individual capacity warrant dismissal because they are foreclosed by the FMLA's enforcement scheme and because she is protected by qualified immunity.

### I. Jones' FMLA Claims against MWRD and Berry are Dismissed without Prejudice for Failure to State a Claim

Jones alleges Defendants MWRD and Berry interfered with her FLMA rights by terminating her employment and by failing to provide her with the requisite FMLA-eligibility notice after she requested leave. Jones alleges that the termination also constituted unlawful retaliation in response to her attempt to exercise her FMLA rights. These claims are dismissed without prejudice under Rule 12(b)(6).

#### A. Jones' Interference Claim Based on Termination

To prevail on her claim for FMLA interference, Jones must demonstrate that (1) she was eligible for protection under the FMLA, (2) her employer was covered by the FMLA, (3) she was entitled to leave under the FMLA, (4) she provided sufficient notice of her intent to take FMLA leave, and (5) her employer denied her the FMLA benefits to which she was entitled. *Goelzer v.*

*Sheboygan Cty., Wis.*, 604 F.3d 987, 993 (7th Cir. 2010). Defendants argue that Jones fails to allege prongs (1) and (3)—that she is eligible for FMLA protection and entitled to FMLA leave.

"Eligible employee" is defined in the statute as "an employee who has been employed . . . for at least 12 months by the employer" and who has "at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A). "The determination of whether an employee meets the hours of service requirement and has been employed by the employer for a total of at least 12 months must be made as of the date the FMLA leave is to start." 29 C.F.R. § 825.110(d). "An employee may be on non-FMLA leave at the time he or she meets the 12-month eligibility requirement, and in that event, any portion of the leave taken for an FMLA-qualifying reason after the employee meets the eligibility requirement would be FMLA leave." *Id.*

There is no dispute that Jones had not worked for MWRD for 12 months—and therefore was not an "eligible employee"—on July 28, 2016, when she inquired about taking leave. (Dkt. No. 28 at 3; Dkt. No. 37 at 2.) Jones argues that she is nonetheless protected under the FMLA because her request was for *future* leave, and the FMLA protects a pre-eligibility request for post-eligibility leave. (Dkt. No. 37 at 7-11.) The Seventh Circuit has not directly addressed whether a pre-eligibility request for post-eligibility leave is protected under the FMLA, but as both parties acknowledge, other courts have held that it is.

The parties focus primarily on *Reynolds v. Inter-Industry Conference on Auto Collision Repair,* 594 F. Supp. 2d 925, 930 (N.D. Ill. 2009), as amended (Jan. 22, 2009), and *Pereda v. Brookdale Senior Living Communities, Inc.*, 666 F.3d 1269 (11th Cir. 2012). In *Reynolds*, the plaintiff's wife went into labor on August 8, 2006. *Id.* at 926. The plaintiff took off eight days' leave and returned to work on August 16, 2006, at which point he requested additional leave

6

starting in November 2006 to help care for his newborn son. *Id.* The plaintiff was fired the same day. *Id.* He would have become eligible for FMLA leave on August 25, 2006. *Id.* The district court held that "under the FMLA, an employer may not terminate an employee who has worked less than twelve months for requesting foreseeable future leave that the employee will be eligible for and entitled to at the time the leave is to begin." *Id.* at 930. In reaching its decision, the court looked to the FMLA notice provisions, which require that an employee notify an employer of foreseeable leave. *Id.* at 928 (citing 29 U.S.C. § 2612(e)(1)). The court reasoned that it would be "illogical to interpret the notice requirement in a way that requires employees to disclose requests for leave which would, in turn, expose them to retaliation, or interference, for which they have no remedy." *Id.* at 928. The Eleventh Circuit reached the same conclusion in *Pereda*. 666 F.3d at 1269 (reversing dismissal of FMLA interference claim, finding that "because the statute contemplates notice of leave in advance of becoming eligible . . . the FMLA regulatory scheme must necessarily protect pre-eligible employees such as [plaintiff], who put their employers on notice of a post-eligibility leave request"). Other courts have held the same. *See, e.g., Wehrley v. Am. Family Mut. Ins. Co.*, 513 F. App'x 733, 742 (10th Cir. 2013) ("[G]iving an employer notice of intent to take FMLA leave, at least where the employee qualifies for that leave, is protected activity for purposes of an FMLA retaliation."); *Potts v. Franklin Elec. Co.*, No. CIV 05-433 JHP, 2006 WL 2474964, at *3 (E.D. Okla. Aug. 24, 2006) ("[W]here the employee, before he or she becomes eligible for FMLA leave, is putting the employer on notice of his or her intent to take FMLA leave after they become eligible for FMLA coverage, logic requires that the FMLA be read to require that the employee be permitted to make a charge against the employer for an adverse-employment action."); *Beffert v. Pa. Dep't of Pub. Welfare*, No. CIV.A.05-43, 2005 WL 906362, at *3 (E.D. Pa. Apr. 18, 2005) ("Since the FMLA

7

contemplates notice of leave in advance of becoming an eligible employee, the statute necessarily must protect from retaliation those currently non-eligible employees who give such notice of leave to commence once they become eligible employees.").

The reasoning in these decisions is persuasive. After all, the purpose of the notice requirements is to protect the employer and allow him to "minimize the disruptive effect of an unscheduled leave on his business." *Aubuchon v. Knauf Fiberglass GmbH*, 359 F.3d 950, 951 (7th Cir. 2004). Denying protection to ineligible employees that give advance notice of FMLA-eligible leave would frustrate this purpose. An employer cannot reasonably expect an employee to provide such notice without protection from retaliation. Therefore, the Court agrees that the FMLA protects a pre-eligibility request for post-eligibility leave.

Here, however, Jones has not alleged that she made a request for post-eligibility leave, *i.e.* leave to occur during a time in which she would have been eligible for FMLA leave. On July 28, 2016, Jones's doctor recommended that she take two weeks' leave. (Dkt. No. 21 at ¶ 35.) At that time, Jones was still five weeks from becoming eligible for FMLA leave. Jones made two requests to Defendants that day: (1) first, she sent an email stating that she would need two weeks' leave and asked about FMLA paperwork "for this time"; (2) second, she left a voicemail "about the doctor's note, the need for time off, and asking [] about initiating the FMLA process and applicable paperwork." (*Id.* at ¶¶ 38, 40; Dkt. No. 28 at Ex. A.) Jones made these requests "anticipating the need for continued time off in the future." (Dkt. No. 21 at ¶¶ 62, 82.) Even assuming Jones herself anticipated needing leave more than five weeks in the future, on or after September 8, 2016 when she would have been eligible for FMLA leave, Jones did not actually request such leave *or* notify Defendants that she anticipated needing such leave. The facts as alleged show only that Jones requested an immediate two weeks' leave and mentioned the need

8

for time off generally. Such requests are not protected. *See Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1039 (7th Cir. 2013) ("There can be no doubt that the request—made by an ineligible employee for leave that would begin when she would still have been ineligible—is not protected by the FMLA.") Jones' failure to show she put Defendants on notice that she was requesting leave to be taken once she became eligible distinguishes her claim from those in the cases she cites in support of her claims. *C.f. Reynolds*, 594 F. Supp. 2d at 926 (plaintiff who would become eligible in August requested time off starting November); *Pereda*, 666 F.2d at 1271 (plaintiff who would become eligible in October requested leave starting in November); *Morkoetter v. Sonoco Prod. Co.*, 936 F. Supp. 2d 995, 997 (N.D. Ind. 2013) (plaintiff alleged his employer "knew that [he] had plans to take medical leave *after becoming eligible* for FMLA leave") (emphasis in original); *Sine v. Rockhill Mennonite Home*, 275 F. Supp. 3d 538, 543-44 (E.D. Pa. 2017) (reasonable to conclude from facts alleged that plaintiff was putting defendant on notice that she was scheduling surgery to take place after her one-year work anniversary).

Jones' FMLA interference claim based on her termination is dismissed without prejudice, pursuant to Rule 12(b)(6).

**B. Jones' Interference Claim based on Failure to Provide Eligibility Notice**

Jones argues that Defendants interfered with her FLMA rights not only by terminating her employment but also by failing to provide her eligibility notice as required by the regulations promulgated pursuant to the FMLA. These regulations require that employers provide eligibility notice "when an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason." 29 C.F.R. § 825.300(b)(1). The employer must then notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances. *Id.* "The eligibility notice must state

whether the employee is eligible for FMLA leave" and, "if the employee is not eligible for FMLA leave, the notice must state at least one reason why the employee is not eligible, including as applicable the number of months the employee has been employed by the employer . . . ." *Id.* at § 825.300(b)(1) (emphasis added).

"Failure to follow the notice requirements . . . *may* constitute an interference with . . . employee's FMLA rights." *Id.* at § 825.300(e) (emphasis added). However, there can be no interference if Jones had no right to FMLA leave. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 910 (7th Cir.2008) (citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002)); *see also, e.g., Brown v. Pitt Ohio Exp., LLC*, No. 12 C 2420, 2013 WL 5221483, at *4 (N.D. Ill. Sept. 16, 2013) (interference claim based on failure to provide proper notice eligibility failed where employee was not an "eligible" or entitled to right under the FMLA.) As explained above, Jones has not established that she was entitled to any FMLA right. Therefore, Jones' interference claim based on MWRD's failure to provide proper eligibility notice fails for the same reasons the interference claim based on her termination fails.

Jones' FMLA interference claim based on her failure to provide eligibility notice is dismissed without prejudice, pursuant to Rule 12(b)(6).

### C. Jones' Retaliation Claim Based on Termination

Jones claims that Defendants unlawfully retaliated against her by terminating her in response to her attempt to exercise her FMLA rights. To prevail on a claim for FMLA retaliation, Jones must show that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment decision; and (3) the decision was casually related to a protected activity. *Scruggs v. Carrier Corp.*, 688 F.3d 821, 826 (7th Cir. 2012). Jones' FMLA retaliation claim fails for the same reason as her interference claims. She fails to allege she was

entitled to FMLA protection and, therefore, that she engaged in a statutorily protected activity. *See Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 828 (7th Cir. 2012) (retaliation claim failed where employee failed to show he engaged in FMLA-protected activity); *Smith v. Hope Sch.*, 560 F.3d 694, 702 (7th Cir. 2009) (employee could not have been fired for asserting rights under the FMLA where her request for leave was not protected); *King v. Ford Motor Co.*, No. 13 C 7967, 2015 WL 5722606, at *7 (N.D. Ill. Sept. 29, 2015) (retaliation claim failed where employee was not eligible for FMLA protection when she requested leave), *aff'd*, 872 F.3d 833 (7th Cir. 2017); *Brown*, 2013 WL 5221483 at *3 (retaliation claim failed where employee was not "eligible" under FMLA either at time of the request or commencement of the requested leave).

Jones' FMLA retaliation claim based on her termination is dismissed without prejudice, pursuant to Rule 12(b)(6).

## II. Jones' FMLA Claims against Berry in Her Individual Capacity

Berry argues that Jones' FMLA claims against her in her individual capacity (Counts III and IV) also warrant dismissal because the FMLA comprehensive enforcement scheme forecloses Section 1983 claims and because she is protected by qualified immunity.

### A. Berry's Qualified Immunity Defense

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Locke v. Haessig*, 788 F.3d 662, 666–67 (7th Cir. 2015) (internal citations omitted). It is "an affirmative defense which may be raised in a motion to dismiss, but the Court considers only the facts alleged in the complaint, which are accepted as true." *Gossmeyer v. McDonald*, 128 F.3d 481, 495 (7th Cir. 1997). The plaintiff must "plead facts showing (1) that the official violated a statutory or constitutional right, and (2)

11

that the right was 'clearly established.'" *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir.2009). The Court "may address the two prongs of the qualified immunity inquiry in whichever order seems better for the case." *Locke*, 788 F.3d at 667.

Here, the analysis stops at the first prong. Jones fails to plead facts showing Berry violated her statutory right. The claims against Berry have already been dismissed on these grounds and, at this point, the Court need not further consider the issue of qualified immunity. Of course, if Jones successfully amends her FMLA claims, Berry can raise a qualified immunity defense again at that time.

### B. Foreclosure of Jones' Section 1983 Claims

Count II and IV of the First Amended Complaint are labeled "FMLA Interference 42 USC Section 1983 Against Regina Berry in her Individual Capacity" and "FMLA Retaliation 42 USC 1983 Against Regina Berry in her Individual Capacity," respectively. Jones argues these Counts represent claims pursuant to the FMLA itself and, alternatively, through Section 1983. (Dkt. 37 at 12.) To the extent Jones' claims for FMLA violations are brought under Section 1983, such claims are foreclosed.

Section 1983 "'authorizes suits to enforce individual rights under federal statutes as well as the Constitution' against state and local government officials." *Levin v. Madigan*, 692 F.3d 607, 611 (7th Cir. 2012) (quoting *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 119 (2005)). "Section 1983 does not create substantive rights, but operates as a means for vindicating federal rights conferred elsewhere.'" *Id.* (internal citations omitted); *see also Padula v. Leimbach*, 656 F.3d 595, 600 (7th Cir. 2011).

Section 1983 "does not provide an avenue for relief every time a state actor violates a federal law." *Abrams*, 544 U.S. at 120. First, the plaintiff must show the federal statute created

12

an individually enforceable right, thereby raising a rebuttable presumption that the right is enforceable under Section 1983. *Id.* The defendant can overcome this presumption by showing Congress foreclosed such enforcement in the enactment of the statute. *Id.* "When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." *Levin*, 692 F.3d at 611 (quoting *Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 20 (1981)); *see also Abrams*, 544 U.S. at 120 ("[E]vidence of congressional intent may be . . . inferred from the statute's creation of a 'comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983.'") (quoting *Blessing v. Freestone*, 520 U.S. 329, 340, (1997)).

The Seventh Circuit has not yet addressed whether the enforcement mechanisms in the FMLA are sufficiently comprehensive to preclude actions under Section 1983. *See United States v. Bd. of Edu. of City of Chicago*, No. 12-cv-622, 2015 WL 1911192 (N.D. Ill. 2015). However, the majority of district courts that have considered the issue have held that they are. *See, e.g., Bd. of Edu.*, 2015 WL 1911192 at *18-19 (N.D. Ill. 2015) (FMLA claim foreclosed by Section 1983); *McGee v. City of Chicago*, No. 11-cv-2512, 2011 WL 4382484, *3-4 (N.D. Ill. 2011) (employee may not pursue FMLA or ADA claim under Section 1983); *Hayduk v. City of Johnstown*, 580 F. Supp. 2d 429, 487 (W.D. Pa. 2008) (concluding, after in-depth analysis, that "there is no meaningful question regarding the applicability of § 1983 to claims arising under the FMLA and that 29 U.S.C. § 2617 is the exclusive remedy for those claims"); *Kilvitis v. Cty. of Luzerne*, 52 F.Supp.2d 403, 419 (M.D.Penn. 1999) ("[T]he FMLA provides [] comprehensive remedial measures that evince[] Congress' intent to foreclose the use of a § 1983 action."); *O'Hara v. Mt. Vernon Bd. of Educ.*, 16 F. Supp. 2d 868, 894–95 (S.D. Ohio 1998) ("[T]he

enforcement scheme of the FMLA, like that of the FLSA, and Title VII provides the exclusive remedy for a violation of the Act, and that plaintiff's cause of action under 42 U.S.C. § 1983 must be dismissed."); *but see Knussman v. State of Md.*, 16 F.Supp.2d 601, 610 (D.Md.1998) (finding FMLA does not foreclose enforcement under Section 1983).

The Supreme Court has recognized that "[t]he provision of an express, private means of redress in the statute itself is ordinarily an indication that Congress did not intend to leave open a more expansive remedy under § 1983." *Levin*, 692 F.3d at 611 (quoting *Abrams*, 544 U.S. at 120); *see also Wright v. City of Roanoke Redev. & Hous. Auth.*, 479 U.S. 418, 427 (1987) (provision of private judicial remedies in statute evidences congressional intent to supplant the § 1983 remedy). The FMLA provides a private right of action by employees, as well as the specific remedies an employee may recover. 29 U.S.C. § 2617(a). "The ordinary inference that the remedy provided in the statute is exclusive can surely be overcome by textual indication, express or implicit, that the remedy is to complement, rather than supplant, § 1983." *Abrams*, 544 U.S. at 122. But there is no such indication in the FMLA. Rather, the private remedy provided by the FMLA is more restrictive than that provided by Section 1983. *See id.* at 121 ("[T]he existence of a more restrictive private remedy for statutory violations has been the dividing line between those cases in which we have held that an action would lie under § 1983 and those in which we have held that it would not."); *c.f., Fitzgerald*, 555 U.S. at 247 ("Title IX contains no express private remedy, much less a more restrictive one."). For example, 29 U.S.C. § 2617 also provides for action by the Secretary of Labor: where the Secretary files a complaint in an administrative action or seeks an injunction, the employee's right to private remedy terminates. *Id.* at § 2617(c); *see also, Hayduk,* 580 F. Supp. 2d at 485 (W.D. Pa. 2008) ("It is clear to the Court that the remedial scheme created by the FMLA is far more restrictive than that

of § 1983."). Enforcement through Section 1983 would conflict with this scheme by allowing an employee whose right to private remedy was terminated under the FMLA to nonetheless file a civil suit and bypass the statutory-imposed limitation. *See Alexander v. Chicago Park Dist.*, 773 F.2d 850, 856 (7th Cir. 1985) (citing *Middlesex*, 453 U.S. at 20). "[W]here a statute provides its own comprehensive enforcement scheme, that scheme may not be bypassed by pleading an underlying violation of the statute and bringing suit directly under § 1983."); *see also, e.g., McGee*, 2011 WL 4382484, at *4 ("Allowing a litigant to circumvent [FMLA] procedure by filing a Section 1983 claim simultaneously would frustrate the scheme Congress provided.").

Finally, the enforcement scheme in the FMLA is modeled after that of the Fair Labor Standards Act (FLSA). *See* S. Rep. No. 103-3 at 35 (The FMLA "enforcement scheme is modeled on the enforcement scheme of the FLSA . . . The relief provided in the FMLA also parallels the provisions of the FLSA."). The Seventh Circuit has acknowledged that "the FLSA is the sole remedy for the enforcement of FLSA rights." *Levin*, 692 F.3d at 617; *see also Kendall v. City of Chesapeake, Va.,* 174 F.3d 437, 439 (4th Cir. 1999) ("We hold that the elaborate remedial scheme provided in the FLSA demonstrates a congressional intent to prohibit § 1983 actions to enforce such FLSA rights."). It follows that, the FMLA is the also sole remedy for the enforcement of FLMA rights, and where the plaintiff's only claim is a violation of the FMLA, she cannot pursue enforcement of that violation through Section 1983. *See, e.g., O'Hara.,* 16 F. Supp. 2d at 894 ("[I]t would be anomalous to hold that when the only unlawful employment practice consists of a violation of the FMLA, the plaintiff can bypass the restrictions on the plaintiff's right to bring and maintain the action under the FMLA by framing the cause of action as one brought under § 1983.); *c.f. Levin*, 692 F.3d at 614 (7th Cir. 2012) ("[A]lthough the ADEA enacts a comprehensive statutory scheme for enforcement of its own statutory rights . . .

15

we find that it does not preclude a § 1983 claim for constitutional rights."). Jones' Section 1983 claims seek enforcement only of statutory rights. Therefore, they are foreclosed.

## **CONCLUSION**

For the reasons stated above, the Court grants the Defendants' Motion to Dismiss. [Dkt. Nos. 27.] Counts I through IV of the Plaintiff's Amended Complaint are dismissed without prejudice. Jones is given until 4/15/18 to file a Second Amended Complaint that comports with this order if she is able. Barring the filing of a Second Amended Complaint, only Count V against MWRD remains.

*Virginia M. Kendall*

Date: March 27, 2018