IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


| | | |
|---|---|---|
| MONICA JONES, | ) | |
| | ) | |
| *Plaintiff*, | ) | No. 17 C 5879 |
| | ) | |
| v. | ) | Judge Virginia M. Kendall |
| | ) | |
| METROPOLITAN WATER RECLAMATION | ) | |
| DISTRICT OF GREATER CHICAGO | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Monica Jones filed suit on August 11, 2017 against Defendant Metropolitan Water
Reclamation District of Greater Chicago (MWRD).  (Dkt. 1).  Jones' First Amended Complaint
alleged violations of the Family Medical Leave Act ("FMLA")[1] and a state law claim of retaliatory
discharge against MWRD.  (Dkt. 21).  On March 27, 2018, the Court granted MWRD's Motion to
Dismiss the FMLA claims pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. 47).  Plaintiff filed a Second
Amended Complaint on April 13, 2018 and Defendant filed a Motion to Dismiss the FMLA claims
(Counts I and II) again.  (Dkt. 49; Dkt. 52). The Motion to Dismiss (Dkt. 52) is granted for the
following reasons.

## BACKGROUND

The facts set forth in Plaintiff's Second Amended Complaint are accepted as true for the
purpose of reviewing the Motion to Dismiss.  *Reynolds v. CB Sports Bar, Inc*., 623 F.3d 1143,
1146 (7th Cir. 2010).  The Court also considers the emails and attachments attached to the Second

---

[1] 29 U.S.C § 2615 et seq.

Amended Complaint, some of which were attached to the parties' briefs on the first motion to dismiss and considered by the Court in its prior opinion. (*See* Dkts. 49-1, 49-2, 49-3, 49-4 and 49-5); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Overall, the facts alleged in the amended pleading remain largely identical to Plaintiff's First Amendment Complaint but for a few additions. (Dkt. 21; Dkt. 49). For purposes of deciding the Motion to Dismiss, the Court discusses only those facts relevant to the FMLA claims at issue.

Plaintiff Monica Jones worked as a Diversity Officer for MWRD for nearly 11 months—from September 8, 2015 until August 4, 2016. (Dkt. 49 at ¶ 5). On Friday, July 15, 2016, Jones was in the office elevator when a co-worker carrying an oversized display case struck Jones in the chest with the case causing her to suffer serious chest contusions. (*Id.* at ¶ 7). Later that day, Jones left a voicemail for her immediate supervisor, Regina Berry, informing Berry that she had been struck in the chest while on the elevator at work, that her chest was hurting, that she would treat herself with medication and that she would keep Berry updated on her condition. (*Id.* at ¶ 8). On Monday, July 18, Jones continued to feel chest pain and notified Berry that she had been injured by the co-worker. (*Id.* at ¶¶ 7, 9). Berry instructed Jones to speak with Human Resources and she did: Jones met with HR analyst Cordelia Henry that same day and met with Henry and HR analyst Robert Byrne the following day. (*Id.* at ¶¶ 11, 13).

Jones also sought treatment for her injury. On Monday, July 18, after her conversations with Berry and Henry, Jones visited the Immediate Care Center. (*Id.* at ¶ 13). By Thursday morning, Jones' chest pain had increased and she went to the emergency room. (*Id.* at ¶ 16). When she returned to work that morning, Jones sent Berry, Henry and Byrne an email attaching the bill from her emergency room visit and asking whether she should file a workers' compensation claim.

(*Id.* at ¶¶ 19-21, Dkt. 49-1). In response, Byrne told Jones she could contact Bob Gottstein, the Claims Administrator, if she wished to file a worker's compensation claim. (Dkt. 49 at ¶¶ 22-23; Dkt. 49-1). Jones then emailed Gottstein stating she would like to file a worker's compensation claim. (Dkt. 49 at ¶¶ 24-25; Dkt. 49-1). Gottstein responded, telling Jones she would have to complete an accident notification form with her supervisor to initiate the process. (Dkt. 49 at ¶¶ 26-27; Dkt. 49-1).

Before she left work on Thursday, July 21, Jones emailed Berry a completed "Accident Notification" form regarding the July 15, 2016 work-related injury. (Dkt. 49 at ¶ 34). The following day on Friday, July 22, Jones emailed Berry a copy of a "Patient Status Report" completed by her doctor and dated June 22, 2016. (*Id.* at ¶ 35; Dkt. 49-3). The body of the email stated only, "please see attached." (Dkt. 49-3). Berry forwarded the email to Byrne and Henry. (*Id.*).

The attached Patient Status Report listed Jones' type of injury as "WC" for Worker's Compensation, listed the diagnosis as "L [left] chest wall contusion" and recommended a "light duty" work restriction. (Dkt. 49 at ¶¶ 35-36). Specifically, under "Work Status," the doctor checked the box next to the option stating "Patient may return to limited duties with [certain] restrictions on 7/25/16." (Dkt. 49-3). The Report scheduled a follow-up appointment for six weeks later on September 2, 2016. (*Id.*).

On Thursday, July 28, Jones experienced sharp pain in her left arm and on the left side of her chest while at an off-site conference and scheduled an emergency doctor's appointment. (Dkt. 49 at ¶¶ 37-39). The doctor opined that Jones needed to take time off of work completely in order to recover from her injury. (*Id.* at ¶ 40). The doctor issued a second "Patient Status Report" listing the same injury type and diagnosis as the first but this time, in the "Work Status" section, checking

the box next to the option stating "Patient may not return to work/is to remain off work." (*Id.* at ¶¶ 42-43; Dkt. 49-4). The July 28 Report did not specify when Jones could return to work but scheduled a follow-up appointment for two weeks later on August 11, 2016. (*Id.*). In light of the doctor's recommendation, Jones understood that some form of ongoing, continued or intermittent leave to treat her injury was reasonably foreseeable. (*Id.* at ¶ 44).

Jones returned to work that evening and emailed Berry, Henry and Byrne a copy of the July 28 Patient Status Report. (*Id.* at ¶¶ 45-47; Dkts. 49-4). The body of the email stated:

> My doctor is not allowing me to return to work for the next two weeks. I have attached a soft copy for your review. Please advise if you have any questions, comments, or concerns. Thank you.

(Dkt. 49-4). Jones also sent a copy of the July 28 Patient Status Report in a separate email to Gottstein, copying Berry and Mary Nix, another MWRD employee. (Dkt. 49-5). The body of this email similarly stated:

> My doctor is not allowing me to return to work for the next two weeks. I have attached a soft copy for your review. Do I need to fill out FMLA paperwork for this time? Or is it notated that the Workers Comp claim is in process? Or is this marked as a medical necessity and for the time used? Please advise as soon as possible. Feel free to contact me if you have any questions, comments, or concerns. Thank you.

(Dkt. 49-5). Jones alleges that her statement in the emails that she could not return for two weeks was "erroneous." (Dkt 49 at ¶ 48).

That same evening, Jones left a voicemail for Berry stating that "she just returned to the office after seeing her doctor" and "her doctor was not letting her return" to work and asking whether and how to initiate FMLA paperwork. (*Id.* at ¶¶ 49-50). Berry did not respond to the voicemail. (*Id.* at ¶ 51). On Friday, July 29, Gottstein responded to Jones' email stating that the third-party workers compensation administrator was still investigating her workers' compensation claim and recommending that she "consider looking into completing possible FMLA paperwork."

(*Id*. at ¶ 52; Dkt. 49-5).   MWRD provided no additional response to her July 28 Patient Status Report or inquiries regarding her FMLA rights.  (*Id.* at ¶ 53).

Jones did not work from Friday, July 29 through Wednesday, August 3.  (*Id*. at ¶ 56).  On or about August 3, 2016, Berry submitted a written memorandum to David St. Pierre, Executive Director of MWRD, recommending Jones' termination.  (*Id.* at ¶ 57).   On Thursday, August 4, Berry called Jones to inform her she was being fired for "unsatisfactory progress."  (*Id.* at ¶ 58).  Jones also received a letter from MWRD dated August 4, explaining that Berry had recommended the termination based on Jones' unsatisfactory services during her probationary period. (*Id.* at ¶ 59).

September 8, 2016 would have marked 12 months' employment at MWRD for Jones.  Jones' period of recovery and ongoing medical treatment for the work-related injury ultimately lasted until October 22, 2016.  (*Id.* at ¶ 64).

## LEGAL STANDARD

"To survive a motion to dismiss under 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.'"  *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). "[I]t is not enough for a complaint to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief . . . by providing allegations that 'raise a right to relief above the speculative level.'" *E.E.O.C. v. Concentra Health Servs., Inc*., 496 F.3d 773, 777 (7th Cir. 2007) (citing *Twombly*, 550 U.S. at 555) (emphasis in original).  The Court construes the complaint "in the light most favorable to the nonmoving party, accept[s] well-

pleaded facts as true, and draw[s] all inferences in her favor." *Reynolds*, 623 F.3d at 1146. "[L]egal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 566 U.S. at 678).

## DISCUSSION

Plaintiff's Second Amended Complaint realleges two claims under the FMLA against Defendant MWRD: a claim of interference with Jones' rights under the FMLA (Count I) and a claim of retaliation for Jones' attempt to exercise FMLA rights (Count II). Defendant MWRD seeks dismissal of both for failure to state a claim pursuant to Rule 12(b)(6).

## I.       Jones' Interference Claim under the FMLA

As in the First Amended Complaint, Jones again alleges MWRD interfered with her FLMA rights by terminating her employment and by failing to provide her with the requisite FMLA-eligibility notice after she requested leave. To prevail on a claim for FMLA interference, Jones must show that (1) she was eligible for protection under the FMLA, (2) her employer was covered by the FMLA, (3) she was entitled to leave under the FMLA, (4) she provided sufficient notice of her intent to take FMLA leave, and (5) her employer denied her the FMLA benefits to which she was entitled. *Goelzer v. Sheboygan Cty., Wis.*, 604 F.3d 987, 993 (7th Cir. 2010). The Court previously dismissed Jones' interference claim after finding that Jones failed to sufficiently allege prongs (1) and (3)—that she is eligible for FMLA protection and entitled to FMLA leave. *See Jones v. Metro. Water Reclamation Dist. of Greater Chicago*, No. 17 C 5879, 2018 WL 1508529 (N.D. Ill. Mar. 27, 2018).

To be eligible for the FMLA, an employee must be employed "for at least 12 months by the employer" and have worked "at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A). The determination of whether an employee

meets these requirements "must be made as of the date the FMLA leave is to start." 20 C.F.R. § 825.110(d). Jones does not dispute that she had not worked for MWRD for 12 months and, therefore, was not an "eligible employee" on July 28, 2016 when she inquired about taking leave.

In dismissing Jones' FMLA claims in her First Amended Complaint, the Court held that while a pre-eligibility request for post-eligibility leave is protected under the FMLA, Jones failed to allege that she made such request. *Jones*, 2018 WL 1508529, at *4. Specifically, the Court found that Jones failed to allege that she actually requested or put Defendants on notice that she was requesting leave to begin on or after September 8, 2016 when she would have been eligible for FMLA leave. *Id.* Rather, the Court found that the facts as alleged showed only that when Jones was still five weeks away from becoming eligible under the FMLA, she merely requested an immediate two weeks' leave and mentioned the need for time off generally. *Id.* The Court distinguished Jones' allegations from cases in which a plaintiff successfully alleged a pre-eligibility request for post-eligibility leave. *Id.* (citing *Reynolds v. Inter-Industry Conference on Auto Collision Repair*, 594 F. Supp. 2d 925, 926 (N.D. Ill. Jan. 13, 2009) (plaintiff who would become eligible in August requested time off starting November); *Pereda v. Brookdale Senior Living Communities, Inc.*, 666 F.3d 1269, 1271 (11th Cir. 2012) (plaintiff who would become eligible in October requested leave starting in November); *Morkoetter v. Sonoco Prod. Co.*, 936 F. Supp. 2d 995, 997 (N.D. Ind. 2013) (plaintiff alleged his employer "knew that [he] had plans to take medical leave *after becoming eligible* for FMLA leave") (emphasis in original); *Sine v. Rockhill Mennonite Home*, 275 F. Supp. 3d 538, 543-44 (E.D. Pa. 2017) (reasonable to conclude from facts alleged that plaintiff was putting defendant on notice that she was scheduling surgery to take place after her one-year work anniversary)).

Jones argues she has amended her complaint to properly allege a pre-eligibility request for post-eligibility leave. Jones amended her complaint by attaching copies of emails between her and MWRD personnel and copies of the July 22 and July 28 Patient Status Reports. Some of the emails, including the second email in which Jones states that her doctor is "not allowing [her] to return to work for the next two weeks," were attached to the parties' briefs on the first motion to dismiss and considered by the Court in its prior opinion. But Jones relies primarily on the Patient Status Reports showing her doctor's medical diagnosis and recommendations to cure the deficiencies in her previous pleading. (*See* Dkt. 56 at 5-7). Also, in the Second Amended Complaint, Jones clarifies what she said in the July 28 voicemail she left for Berry. Previously, Jones alleged that she told Berry "about the doctor's note, the need for time off" and asked "about initiating the FMLA process and applicable paperwork." (Dkt. 21 at ¶ 40). In the Second Amended Complaint, Jones now alleges that she told Berry that "she just returned to the office after seeing her doctor" and "[h]er doctor is not letting her return to work" and asking "whether and how to initiate FMLA paperwork." (Dkt. 49 at ¶ 50). Jones argues that these additional facts sufficiently allege that her request was for "ongoing" and "open-ended" leave that may continue into the eligibility period. (Dkt. 56 at 7-11).

But Jones' communications with MWRD, even as realleged, never state that she needed or that her doctor recommended "ongoing" or "open-ended" leave. Both of Jones' emails to MWRD stated that her doctor mandated that she take "the next two weeks" off work. Nothing about the July 28 Patient Status Report indicated Jones would need more than two weeks off. Contrary to Jones' assertion, the Report did not recommend that she was to remain off work for an "open-ended period of time." (*See* Dkt. 56 at 2). The Report stated only that Jones had a follow-up appointment two weeks later and was otherwise silent as to whether she would need to take

additional time off after that appointment. Likewise, Jones' voicemail to Berry stated only that her doctor "was not letting her return to work"; Jones never stated that she would need time off indefinitely or that her doctor advised that she would need to be off work for an "open-ended" period of time. To the extent the Patient Status Report or Jones' email was ambiguous, Jones' emails clarified that she was specifically requesting only two weeks' leave.

When addressing the "serious health condition" element of an FMLA claim, the Seventh Circuit has held that an employee need only place her employer on notice that she "likely" has an FMLA-qualifying condition or of a "probable" basis for which she is entitled to FMLA leave. *See Burnett v. LFW Inc*., 472 F.3d 471, 479 (7th Cir. 2006); *Stevenson v. Hyre Elec. Co*., 505 F.3d 720, 724-75 (7th Cir. 2007). Plaintiff argues the same "low bar" applies to notice that she is requesting leave to begin at a time in which she would be eligible for leave under the FMLA. (Dkt. 56 at 8-10). Given the limited case law addressing pre-eligibility requests for post-eligibility generally, it is no surprise the Seventh Circuit has not yet addressed what notice standard applies when the timing rather than the basis of the requested leave is at issue. Regardless, Plaintiff's allegations fail to meet even the "low bar" set forth in the cases she cites.

Based on the information Jones provided to MWRD—the voicemail stating her doctor "was not letting her return to work," the first email stating that her doctor was "not allowing [her] to return to work for the next two weeks," the second email repeating the same, and the accompanying doctor's note showing she was to take off work and return for an appointment two weeks' later—MWRD was at best on notice that Jones' needed two weeks off of work until her follow-up appointment. Jones' assertion that her two statements in the emails that she only needed the "next two weeks" off work was erroneous changes nothing. Only Jones knew what her doctor told her during her appointment. MWRD could rely only on the information Jones provided and

based on that information as alleged, MWRD could not plausibly have been on notice that Jones was requesting leave to begin five weeks later for the same injury or even that it was "likely" or "probable" that she would need such leave.

Therefore, the Court's prior reasoning still applies. Jones' Second Amended Complaint fails to sufficiently allege that she requested or put MWRD on notice that she was requesting leave to begin on or after September 8, 2016. Jones' FMLA interference claim is dismissed with prejudice pursuant to Rule 12(b)(6).

## II.    Jones' Retaliation Claim Based on Termination

Jones also realleges her claim that MWRD unlawfully retaliated against her by terminating her in response to her attempt to exercise her FMLA rights. To prevail on a claim for FMLA retaliation, Jones must show that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment decision; and (3) the decision was casually related to a protected activity. *Scruggs v. Carrier Corp.*, 688 F.3d 821, 826 (7th Cir. 2012). For the reasons discussed above, Jones fails to allege she was entitled to FMLA protection and, therefore, that she engaged in a statutorily protected activity. *See Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 828 (7th Cir. 2012) (retaliation claim failed where employee failed to show he engaged in FMLA-protected activity); *Smith v. Hope Sch.*, 560 F.3d 694, 702 (7th Cir. 2009) (employee could not have been fired for asserting rights under the FMLA where her request for leave was not protected). Therefore, Jones' FMLA retaliation claim based on her termination is also dismissed with prejudice pursuant to Rule 12(b)(6).

## III.   Jones' Remaining State-Law Claim for Retaliatory Discharge under Illinois Common Law

Jones' only remaining claim alleges that MWRD discharged her in retaliation for seeking and claiming benefits under the Workers' Compensation Act. (Dkt. 49 at ¶¶ 91-100). "As a

general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the remaining pendant state claims." *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007) (citing *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1252 (7th Cir.1994)). This rule is subject to three exceptions: (1) when the statute of limitations bars the refiling of the state claim, (2) where the court has already expended substantial judicial resources on the state claim, and (3) when it is clearly apparent how the state claim is to be decided. *Id.* None of these exceptions applies here. Under Illinois law, the statute of limitations for Jones' retaliatory discharge claim is five years and has, therefore, not expired on a claim based on events occurring in 2016. *See Zelman v. Hinsdale Twp. High Sch. Dist.* 86, No. 10 C 00154, 2010 WL 4684039, at *2 (N.D. Ill. Nov. 12, 2010) (five-year statute of limitation applies to tort of retaliatory discharge claim under Illinois common law); *see also Collins v. Town of Normal*, 951 N.E.2d 1285, 1290 (Ill. App. Ct. 2011) (claim for discharge in retaliation for exercising rights under the Workers' Compensation Act not subject to Tort Immunity Act's one-year statute of limitation) (citing *Raintree Homes, Inc. v. Village of Long Grove*, 807 N.E.2d 439, 447 (Ill. 2004)). Regardless, Illinois law gives Jones one year from the dismissal of her state claim in federal court on jurisdictional grounds to refile that claim in state court. 735 ILCS 5/13-217; *Davis v. Cook Cty.*, 534 F.3d 650, 654 (7th Cir. 2008). Because the case is still in the pleading stage, the Court has not yet expended substantial resources on Jones' state claim. The Court also has not decided any issue that is dispositive to Jones' state claim. Therefore, the Court declines to exercise supplemental jurisdiction over Jones' remaining state law retaliatory discharge claim brought under Illinois common law.

## <u>CONCLUSION</u>

For the reasons stated above, the Court grants the Defendant's Motion to Dismiss. (Dkt. 52). Counts I and II of the Plaintiff's Second Amended Complaint are dismissed with prejudice. The Court declines to exercise supplemental jurisdiction over Jones' only remaining state claim and, therefore, dismisses the state law claim for retaliatory discharge without prejudice.

Hon. Virginia M. Kendall
United States District Judge

Date: August 9, 2018